Marilyn ST. MICHEL a/k/a Mame St. Michel, et al., individually, and as Assignees of Fergen, Inc., d/b/a Vic's Lounge, Respondents,

v.

BURNS AND WILCOX, LTD., Appellant,

Moorhead Insurance Agency, et al., Respondents,

and

MOORHEAD INSURANCE AGENCY, et al., Defendants and Third–Party Plaintiffs,

v.

AGENCY MARKETING GROUP, INC., Third–Party Defendant.

Nos. C5–88–982, C5–88–1002.

Court of Appeals of Minnesota.

Dec. 13, 1988.
Review Denied March 17, 1989.

David S. Maring, Cahill & Maring, P.A., Moorhead, for respondents St. Michel, et al.

Gunder Gunhus, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellant Burns and Wilcox, Ltd.

Carol B. Swanson, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents Moorhead Ins. Agency, et al.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and LOMMEN *, JJ.

## OPINION

CRIPPEN, Judge.

Burns and Wilcox, Ltd. contends it did not violate any of the provisions of the Minnesota Surplus Lines Insurance Act, and particularly that it did not violate the Act because it acted through a licensed surplus lines insurance agent. Burns and Wilcox, Moorhead Insurance Agency, and Donald Birmingham contend the trial court erred in its determination that they are bound to the settlement agreement of plaintiffs and insured Fergen, Inc. We affirm the trial court's conclusion appellants violated the Surplus Lines Insurance Act, and that they are liable for any loss Fergen has sustained which would have been covered by the issued insurance. We remand for determination of Fergen's liability for injuries suffered by plaintiffs.

## FACTS

Respondent Marilyn St. Michel slipped and fell on a wet floor by the exit of Vic's Lounge, a bar operated by Fergen, Inc., on the evening of December 10, 1983. She fell allegedly because of the negligence of Fergen's agents and employees. In July of 1985, Marilyn and Rodger St. Michel brought a personal injury action against Fergen, and the suit was settled pursuant to a stipulation and assignment executed by the parties on November 17, 1986.

As part of the settlement agreement, Fergen stipulated to the entry of judgment for $233,750 with the understanding that $10,000 of that amount would be paid in cash by Fergen to the St. Michels in exchange for partial satisfaction of judgment. Fergen assigned to the St. Michels the right to proceed against Donald Birmingham, Moorhead Insurance Agency, and Burns and Wilcox, who sold to Fergen an insurance policy with a surplus lines insurer that had gone into receivership. The St. Michels further agreed not to execute on the judgment entered against Fergen over Fergen's $10,000 payment. On November 24, 1986, a federal trial court ordered that judgment be entered against Fergen for $233,750 based on the stipulation and assignment.

In February 1987, the St. Michels, individually and as assignees of Fergen's rights, brought this action against Moorhead Insurance Agency, Birmingham, and Burns and Wilcox for, among other things, negligent violation of the Minnesota Sur-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

plus Lines Insurance Act. Minn.Stat. §§ 60A.195–60A.209 (1986).

In October 1983, Fergen purchased a surplus lines insurance policy from Union Indemnity Insurance Company of New York. The policy was purchased from appellants' Moorhead Insurance Agency and Donald Birmingham, and was issued and bound through appellant Burns and Wilcox. Although Union Indemnity was eligible to issue surplus lines coverage at the time of the purchase, Moorhead Insurance Agency, Birmingham, and Burns and Wilcox were not licensed surplus lines agents or brokers. On or about September 6, 1985, Fergen was notified that Union Indemnity was placed into liquidation on July 16 of that year, and that Union Indemnity would not provide a defense or indemnification with respect to the St. Michel's claims against Fergen.

The St. Michels moved for summary judgment with respect to counts II and IV of their complaint. Count II alleged that appellants negligently violated the following three provisions of the Surplus Lines Insurance Act:

1) Minn.Stat. § 60A.198, subd. 1 (surplus lines agents and brokers must be licensed);

2) section 60A.201, subd. 1 (insurance must not be placed with a surplus lines insurer when such insurance is available from a licensed insurer [within Minnesota]); and

3) section 60A.207 (notice requirement on surplus lines policies that the public does not guarantee payment in case of insolvency of a surplus lines insurer).

Count IV of the St. Michels' complaint alleged that under section 60A.17, subd. 12 appellants are personally liable for the losses sustained by the insured based on participation in the sale of the policy without complying with the surplus lines insurance statutes.

In its order and memorandum dated November 22, 1987, the trial court held that appellants are bound to indemnify Fergen for its liability to the St. Michels, and accordingly granted the motion for partial summary judgment with respect to the lia-

bility of the appellants, reserving for future decision the remaining issues of fraud and collusion, and the reasonableness of the stipulated judgment as to damages. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982) (plaintiff judgment creditor has the burden of proving the settlement is not fraudulent or unreasonable). In an amended order and memorandum of January 20, 1988, the trial court further ordered there was no just reason for delay, and pursuant to Minn.R.Civ.P. 54.02, final judgment was entered on February 12, 1988.

This appeal followed from the judgment.

## ISSUES

1. Whether agents violated the Minnesota Surplus Lines Insurance Act?

2. Whether Burns and Wilcox is liable under section 60A.17, subd. 12, where it participated in issuing a surplus lines policy but expected immunity from liability by hiring a licensed surplus lines agent?

3. Whether agents are bound to a settlement agreement between plaintiff and the insured?

## ANALYSIS

On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn. 1979); Minn.R.Civ.P. 56.03.

1. Statutory indemnity.

The Minnesota Surplus Lines Insurance Act allows specially licensed agents and brokers to place insurance with eligible out-of-state insurers on lines of insurance that are unavailable from regularly authorized and licensed insurers in Minnesota. Minn. Stat. §§ 60A.195–.209. To be an eligible surplus lines insurer, the insurance company must be in a stable and unimpaired financial condition. Minn.Stat. § 60A.206, subd. 1. This requirement can be met after an insurer obtains recognition from the Commissioner of Commerce as an eligible surplus lines insurer. *Id.* At the time it

issued Fergen's insurance policy, Union Indemnity was recognized by the Commissioner as an eligible surplus lines insurer. The company was not licensed for issuance of other coverage in Minnesota.

In the event the eligible surplus lines insurer (not licensed to issue other policies) becomes insolvent, there is no payment of loss guarantee. To balance the risk of insolvency, the Act requires strict compliance with its provisions, including specific licensing, notice, and disclosure requirements. The compliance provision is very broad:

> A person shall not offer, solicit, make a quotation on, sell, or issue a policy of insurance, binder, or any other evidence of insurance with an eligible or ineligible surplus lines insurer, except in compliance with sections 60A.195 to 60A.209.

Minn.Stat. § 60A.198, subd. 2 (1986).

Any person acting "as an agent or broker in the transaction of surplus lines insurance" must be "licensed under sections 60A.195 to 60A.209." Minn.Stat. § 60A.198, subd. 1 (1986). Every insurance policy from an eligible surplus lines insurer must have on its face the following notice:

> THIS INSURANCE IS ISSUED PURSUANT TO THE MINNESOTA SURPLUS LINES INSURANCE ACT. THE INSURER IS AN ELIGIBLE SURPLUS LINES INSURER BUT IS NOT OTHERWISE LICENSED BY THE STATE OF MINNESOTA. IN CASE OF INSOLVENCY, PAYMENT OF CLAIMS IS NOT GUARANTEED.

Minn.Stat. § 60A.207 (1986). The act also requires that a surplus lines licensee inform an insured that coverage will be placed "with an insurer not licensed in this state and that payment of loss is not guaranteed in the event of insolvency of the eligible surplus lines insurer." Minn.Stat. § 60A.198, subd. 5 (1986).

■ Personal liability is imposed on any person who "participates in any manner" in the sale of insurance on behalf of any unlicensed insurance company unless the person acts in compliance with the Surplus Lines Insurance Act. Minn.Stat. § 60A.17, subd. 12 (1986). *See Farmers & Mer-*

*chants State Bank of Pierz v. Bosshart,* 400 N.W.2d 739, 742–43 (Minn.1987). Even though a company is an eligible surplus lines insurer, an agent or broker who violates the requirements of the Surplus Lines Insurance Act is personally liable for all premiums and for any loss the insured has sustained which would have been covered by the issued insurance.

It is undisputed that the insurance policy issued to Fergen did not have the required notice of disclosure, and that none of the agents disclosed to Fergen that Union Indemnity was a surplus lines insurer.

2. Burns and Wilcox's liability.

■ Moorhead Insurance Agency and Birmingham do not dispute the trial court's findings of their violations and liability under the Act. Burns and Wilcox, however, denies it has violated any provision of the act. By its own admission, however, Burns and Wilcox participated in the placement of Fergen's insurance policy with Union Indemnity: as general agent for Union Indemnity, Burns and Wilcox issued and bound Fergen's policy. Because Burns and Wilcox acted as an agent in the chain of relationships between Fergen and Union Indemnity, it was responsible for compliance with the surplus lines statute under the broad terms of section 60A.198, subd. 2, and it bore the indemnity obligation of a participant under section 60A.17, subd. 12.

■ Burns and Wilcox further contends it satisfied its licensing obligation by hiring and dealing through Marketing Agency Inc., a licensed surplus lines agent. We disagree. Liability for an unathorized sale of surplus lines insurance is assigned to "any person, regardless of whether that person is required to be licensed as an insurance agent, who participates in any manner" in the sale of the insurance. Minn.Stat. § 60A.17, subd. 12 (1986). Burns and Wilcox participated in the unauthorized sale of surplus lines insurance by issuing and binding the policy for Union Indemnity, and thus it is liable for any premium or loss of the insured.

■ Burns and Wilcox also contends section 60A.198, subd. 5 imposes a duty to disclose on a licensee, and that because it is not a licensee, it did not have a duty to disclose. This fails to account for other provisions of the Act which Burns and Wilcox violated. The notice rule is not limited to licensees, but applies to any sale of a surplus lines insurance policy. Minn.Stat. § 60A.207. The provision restricting placement of surplus lines insurance when coverage is available from a licensed insurer is also a prohibition applying to any sale of surplus lines insurance. Minn.Stat. § 60A.201. Further, the licensing requirement affects all persons who act in any manner as an agent or broker. Minn.Stat. § 60A.198, subd. 1.

Burns and Wilcox also argues that because it was not a resident agent, it was not eligible to be a licensee and therefore the trial court inappropriately extended the liability provision of section 60A.17, subd. 12 to it. To the contrary, the provisions of the Act on compliance and licensing reach beyond licensees to include all persons.

■ Burns and Wilcox next claims it had no knowledge of the violation. However, the company is responsible under the law to see that compliance occurs so long as they participate in the transaction.

Finally, Burns and Wilcox contends it did not violate the licensing provision because it was not an agent or broker. But by its own description of the facts, Burns and Wilcox was an agent or broker for Union Indemnity.

### 3. Binding effect of settlement.

■ Moorhead Insurance Agency, Birmingham, and Burns and Wilcox contend they should not be bound to the settlement agreement because they did not participate in the litigation between the plaintiffs and insured Fergen. The trial court relied on the Minnesota Supreme Court decision in *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), to conclude that appellants are bound to the settlement. In *Miller*, the rights and obligations between the insured and insurer were grounded on an insurance policy contract. During the insurer's litigation over the question of whether its policy covered the accident claim, the insured entered settlement negotiations, gave the insurer notice and an opportunity to participate, and then settled with the plaintiff. The supreme court held that the insured may settle with a plaintiff without breaching its own contractual obligation to cooperate. *Id.* at 733.

The decision in *Miller* is similar to cases in other jurisdictions which hold that if an insurer refuses coverage or refuses to defend, in breach of its contractual obligation to defend, the insured may make a reasonable settlement in good faith which is binding on the insurer. *See Isaacson v. California Insurance Guarantee Association,* 44 Cal.3d 775, 792, 750 P.2d 297, 308–09, 244 Cal.Rptr. 655, 666 (1988); *Arizona Property and Casualty Insurance Guarantee Fund v. Helme,* 153 Ariz. 129, 138, 735 P.2d 451, 460 (Ariz.Ct.App.1987); *Gladstone v. D.W. Ritter Co.,* 133 Misc.2d 922, 508 N.Y.S.2d 880, 882 (Sup.1986); *Shook v. Allstate Insurance Co.,* 498 So.2d 498, 500 (Fla.Dist.Ct.App.1986); *Texas United Insurance Co. v. Burt Ford Enterprises,* 703 S.W.2d 828, 835 (Tex.Ct.App.1986); *Alfiero v. Berks Mutual Leasing Co.,* 347 Pa.Super.Ct. 86, 91, 500 A.2d 169, 172 (1985). This rule allows an abandoned insured to protect itself from personal liability by settling with the plaintiff. *See Helme,* 735 P.2d at 459–60. The insurer takes the risk it erred in denying coverage. *State Farm Mutual Automobile Insurance v. Paynter,* 122 Ariz. 198, 204, 593 P.2d 948, 950–51 (Ariz.Ct.App.1979).

Unlike the situation where the insurer breaches its duty to defend, the insurer in *Miller* did not repudiate its obligation to defend, but instead provided the insured with separate counsel. *Miller,* 316 N.W.2d at 733. Nevertheless, *Miller* involved the same risk that the insurer will absorb liability for a settlement between a plaintiff and the company's insured. *See id.* at 734. The insurer faces unenviable risks: on the one hand it can stand back and risk a large settlement, or on the other, it can enter settlement negotiations, take the defense of the insured and risk waiving possible coverage defenses. Thus by refusing to

defend, the insurer must assume the risk the insured will protect itself by settling.

We agree with appellants that their situation is different from the circumstances in *Miller*. The agent's situation is not like the existing contractual relationship between an insured and insurer. The insurer's responsibilities under the contract exist at the time the claim arises between the plaintiff and the insured, but the agent's obligation to indemnify rests on a prospective application of section 60A.17, subd. 12, and arises only after the insurer becomes insolvent and the agent's substitute liability is confirmed by agreement or litigation. During the interim, there is an inadequate relationship to justify the risk and eventual burden of a settlement. Although the circumstance of the insured may be the same, the risk on the other side is for an entity who not only must consider waiving coverage issues, but must also consider waiving questions of fact and law as to the liability of agents for an insolvent insurer.

It is evident that in *Miller* the supreme court undertook a delicate balancing of burdens and risks and resolved them against the interest of an insurer. Different questions are involved in applying the same rule of law to a case which does not involve existing contractual responsibilities between an insured and insurer, and *Miller* does not support this application.

## DECISION

Appellants have violated the licensing, notice and disclosure provisions of the Minnesota Surplus Lines Insurance Act. Burns and Wilcox is liable to the insured, Fergen, for loss suffered even though it acted through a licensed surplus lines insurance agent. However, the settlement agreement of plaintiffs and Fergen is not binding on the appellants.

Affirmed in part, reversed in part with a remand for further litigation to determine the liability of Fergen for injuries suffered by St. Michel.